IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                                              Criminal Case No.: 3:24CR18
                                                                Judge Robert E. Payne

WILLIAM HALL,

        Defendant.

**<u>Defendant William Hall's Request for a Variance</u>**

On August 16, 2024, this Court ordered the parties to amend their briefs regarding Mr. Hall's Request for a Variance. Mr. Hall believes that a downward variance is appropriate in this matter.

Under 18 U.S.C. 3553 the court has a responsibility to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. This code section provides a three-step process to structure the sentence. At the end of this analysis, the court may impose a sentence outside of the recommended guideline sentence range - a "variance."

<u>*When A Variance Applies*</u>

Variances are an appropriate tool the sentencing district court may use to sentence a person when the guidelines are either too harsh or not sufficient for the seriousness of the crime. *See United States v. Moreland, 437 F.3d 424 (4th Cir. 2006).* This Court has discretion to rely on broader and more diverse range of factors in considering a downward variance under 18 U.S.C. §3553(a).

"There is a 'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the sort of information they may consider' at an initial sentencing proceeding. *Concepcion v. United States*, 597 U.S. 481 (2022). A federal judge in deciding to impose a sentence "may appropriately

conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Id.* Indeed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.*

Further, "[a] decision to impose a sentence more lenient than the one advised by the Guidelines was not a failure to make a finding necessary to apply the cross reference or enhancement in the first place … such a decision would be "an exercise of a district court's broad sentencing discretion." *United States v. Elboghdady*, 4th Cir. No. 22-4194, 2024 WL 4113003, at *8 (4th Cir. Sept. 11, 2024).

### *Variances may be applied liberally*

As stated above a sentencing judge has broad sentencing discretion. The judge may use this broad discretion to impose a non-Guidelines sentence that in his judgment is "more consistent with the statutory sentencing factors set out in section 3553(a)". *United States v. Moore*, 7th Cir. No. 23-2191, 2024 WL 4131161, at *3 (7th Cir. Sept. 10, 2024). Sentencing is "a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds. *Irizarry v. United States*, 553 U.S. 708, 715 (2008).

### *Variances from Guidelines in 18 U.S.C. §3553(a)*

A variety of potentially relevant factors may be considered by the Court in fashioning a sentence that is appropriate for the charge of which the defendant was convicted. See, e.g. *Dean v. United States*, 137 S.CT. 1170 (2017), *United States v. Tomoko*, 562 F.3d 558 (3rd. Cir. 2009), and *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008).

According to Table 44 of the 2023 United States Sentencing Commission's Annual Report and Sourcebook ("2023 Sourcebook"), the most common reasons relied upon by the Courts for downward variances from the Guideline range are as follows:

1. The history and characteristics of the defendant;
2. Reflect seriousness of offense/promotes respect for law/just punishment;
3. Afford adequate deterrence to criminal conduct;
4. The nature and circumstance of the offense;
5. Protect public from further crimes;
6. Family ties and responsibilities (§5H1.6);
7. Avoid unwarranted sentencing disparity;
8. Criminal history issues;
9. Drug dependence and alcohol abuse (§5H1.4);
10. Acceptance of responsibility;
11. Age (§5H1.1);
12. Remorse;
13. Mental and emotional conditions;
14. Lack of youthful guidance/tragic or troubled childhood;
15. Previous employment record (§5H1.5);
16. Rehabilitation;
17. Role in the offense;
18. Provide correctional treatment;
19. Nonviolent offense;
20. General mitigating circumstances (§5K2.0);

21. Conduct while on release, bond, or supervision;

22. Physical condition (§5H1.4);

23. Provide educational or vocational training;

24. Pursuant to plea agreement;

25. Community ties (§5H1.6);

26. Cooperation without motion (not §5K1.1);

27. Applied proposed guideline amendment (Amendment 821);

28. Provide restitution to any victims;

29. First Step Act safety valve expansion;

30. Provide medical care;

31. Aberrant behavior (§5K2.20);

32. Early plea;

33. Waiver of appeal;

34. Charitable service/good works; and

35. Other.

2023 Sourcebook, Table 44, available at www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/2023_Sourcebook.pdf.

*Main Considerations for a Variance in Mr. Hall's Case*

In considering a variance reducing the proposed Guideline sentence for Mr. Hall, this Court is encouraged to pay special consideration to the following:

*The history and characteristics of the defendant*

Mr. Hall's criminal record has been adequately discussed in the Pre-Sentence Report ("PSR") but his characteristics are still worth reviewing. He was a model prisoner and his adjustment to release was exemplary.

### *Reflect seriousness of offense/promotes respect for law/just punishment*

The Government and the undersigned disagree as to the seriousness of selling tobacco in jail. The question which really sums up the sentencing hearing, is what is the just and fair punishment for selling tobacco? The undersigned believes a just and fair punishment would be home incarceration, perhaps with a monitor and community monitoring or a suspended sentence with probation.

### *Afford Adequate Deterrence to Criminal Conduct*

Clearly no sentence, whether Home Incarceration or a sentence above the guidelines will have any effect on inmates smoking. Almost every inmate considering selling tobacco will not know about whatever sentence Mr. Hall receives. Additionally, severity of punishment does little to nothing to deter crime according to the United States Government. *See* U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, Five Things About Deterrence, www.ojp.gov/pdffiles1/nij/247350.pdf.

### *The Nature and Circumstance of the Offense*

The Court heard substantial evidence about the nature and circumstances of the offense. After approximately four months of refusing to assist a crooked guard, Mr. Hall agreed to sell tobacco to other inmates. The inmates would pay with apps on their phones and then the person on the outside, Ms. Cronin, would distribute the money while taking a share for herself. Mr. Hall effectively received $900 from the month he was involved. At the first chance to transfer prisons, he jumped at the chance to disentangle himself from this unfortunate situation.

<em><u>Protect Public from Further Crimes</u></em>

The public is not put at risk from this behavior. No sentence will protect the public from guards bringing tobacco into prisons and no sentence will protect the public from inmates selling, purchasing and smoking cigarettes. The closest thing to protecting the public is that if inmates do not smoke, then their health should improve.

<em><u>Family ties and responsibilities (§5H1.6)</u></em>

While under a departure from the Guidelines family ties and responsibilities are not ordinarily relevant nor encouraged, they are a valid consideration under a variance. This Guideline specifically chose to use the word "may" instead of "shall" suggesting that there are times when applying this rule in a variance is appropriate.[1]

Here it is very appropriate. Mr. Hall has reconnected with his children, become employed to begin repaying child support and its arrears while he was incarcerated, the necessary care he provides to his mother all show that family ties, and more importantly, responsibilities are appropriate in this matter.

<em><u>Avoid Unwarranted Sentencing Disparity Between Co-Defendants</u></em>

Variances may be considered by the Court based on the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6). Additionally, the Court is directed to consider when disparities are appropriate at sentencing between two similarly situated co-defendants. *Gall v. United States*, 553 U.S. at 55. Those disparities between co-defendants must be explained with

---

[1] The undersigned acknowledges that "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. 18 U.S.C.A. § 3553.

identified, supportable basis for the inconsistency. *United States v. Reyes-Santiago*, 804 F.3d 453 (1st Cir. 2015). Therefore, co-defendant disparity is not a *per se* improper factor. *United States v. Smart*, 518 F.3d 800 (10th Cir. 2008). The Court may fashion a sentence that attempts to address the "disparity in sentences between two nearly identically situation individuals who committed the same crime in the same conspiracy." *United States v. Krutsinger*, 449 F.3d 827 (8th Cir. 2006). In fact, the plain language of §3553(a)(6) seems to permit consideration of disparities between similar situated co-defendants. *Unites States v. Fernandez*, 443 F.3d 19 (2d Circuit 2006).

*Disparity Between Other Federal Defendants*

Regarding federal defendants, the Guidelines give a clear indication of the recommended punishment for similarly situated defendants. However, this Court may consider the disparity between the defendant and other federal defendants. *United States v. Lente*, 647 F.3d 1021 (10th Cir. 2011).

The 2023 Sourcebook reports that of the 366 individuals convicted of a bribery charge. 2023 Sourcebook, Table 5.

Of the total 366 individuals, there were downward variances in 144 cases. Of those, the mean decrease was 21 months reflecting a mean decrease of 56.9%. The median decrease was 15 months reflecting a median percentage decrease of 56.4%. 2023 Sourcebook, Table 40.

In the 4th Circuit out of 4,263 cases, the Court granted variances in 1,631cases, or 38.3% of the time. 2023 Sourcebook, Table 30.

In the Eastern District of Virginia specifically, there were 877 total cases and variances were granted in 367 cases, or 41.8% of the time. 2023 Sourcebook, Table 30.

Regarding the sentences imposed relative to the guideline range by primary sentencing guideline, of sentences imposed under Guideline 2C1.1, there were 266 sentences handed down by the Courts. Of these, 45 were within the Guideline Range, 73 departed under 5K1.1, 9 are simply recorded as downward departures and there were 99 variances. 2023 Sourcebook, Table 32.

It is clear from the statistics that variances are not outside of the norm. They happen frequently and therefore, guideline disparity with other federal inmates or co-defendants may be dismissed as a concern.

<u>*Acceptance of responsibility*</u>

Mr. Hall voluntarily disclosed the federal offense upon interview. He immediately accepted responsibility for the crime. He plead guilty based on an information in lieu of an indictment and trial. ECF 24.

<u>*Remorse*</u>

Mr. Hall has repeatedly expressed remorse. Most recently in front of this Court. Transcript pg. 12.

<u>*Lack Of Youthful Guidance/Tragic Or Troubled Childhood*</u>

*Troubled or Traumatic Childhood*

This Court should consider Mr. Hall's childhood traumas, particularly as they relate to any ongoing mental or emotional conditions from which the defendant suffers. As stated in the Pre-Sentence Report that his childhood was "turbulent." ECF 24. This included the suicide of his father, drug use by his mother, and his entry into the foster care system due to his mother's abuse and neglect. ECF 24. Mr. Hall provided that he is currently participating in dual treatment (mental health and substance abuse). ECF 24. It is impossible to calculate the trauma from any one of those events. However, a scholarly article published in Forensic Psychology Today, Trauma & Children in Foster Care: A Comprehensive Overview, relates that

> **trauma is not just extremely common, but often accumulative and chronic over the individual's lifespan. Childhood adversities, such as trauma caused by abuse or parental loss,[2] are in many cases the precursors for the removal of the child, thus impacting the child's physical health as well as mental health. Toxic stress is deemed as the physiologic result of dangerous, recurrent, or prolonged experience of trauma caused by the initiation of the stress response without the protective existence of a compassionate adult. Toxic stress impacts the child's domains of cognition, learning, and memory; this leads to negative changes in behavior and the decreased ability to regulate emotions properly. In addition, toxic stress causes physical detriments and behavioral detriments including obesity, cardiovascular disease, COPD, diabetes, depression, anxiety, suicidality, and behavior issues. Similarly, children and youth in foster care have increased mental health issues; it is estimated that half (50 percent) of children and youth in the child welfare systems are at a 2.5 times heightened risk in developing mental health disorders compared to children not involved in the child welfare system. Children in foster care are diagnosed with behavioral health issues five times as often versus children not in care.**

---

[2] Both of which occurred to Mr. Hall with the suicide of his father and the drug use of his mother.

Forensic Psychology Today, Trauma & Children in Foster Care: A Comprehensive Overview, www.digitalcommons.csp.edu/cgi/viewcontent.cgi?article=1079&context=forensic_scholars_today.

Section 3553(a) specifically counsels the Court to consider "the history and characteristics of the defendant[.]" In 2023 over 2,297 sentencing judges considered a defendant's lack of youthful guidance or tragic or troubled childhood in varying downward. See 2023 Sourcebook, Table 44.

### *Rehabilitation and Post-Sentence Rehabilitation*

Rehabilitation is a permissible factor to be considered in sentencing. "When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." *Concepcion v. United States*, 597 U.S. 481 (2022).

Since serving his sentence for the previous charge, Mr. Hall remains a model citizen. Employed, married, paying child support for children from past relationships, caring for his disabled mother, paying taxes, remaining drug and alcohol free, keeping the peace and being of good behavior. He remains in treatment for lingering mental health issues.

### *Role in the Offense*

Mr. Hall has freely admitted his role in this matter. He was approached by Guard Thomas and after months of hounding, eventually agreed to distribute tobacco that Mr. Thomas would bring into the prison. As the Court accurately pointed out at the last hearing, Mr. Hall only received additional points because he directed Ms. Cronin what to do with the money.

### *Nonviolent Offense*

This is a non-violent offense. *See* §4B1.2(a).

### *General Mitigating Circumstances (§5K2.0)*

Although §5K2.0 is generally reserved for departures instead of variances, the sentencing court may consider the same criteria when considering a variance. Specifically considered are coercion and duress (§5K2.12). While the conduct of Offender Thomas does not rise to the level of coercion leading to Mr. Hall's fear for his safety, it had a significant impact. A person in authority telling a person under their authority that he will set him on fire (meaning make one's life miserable) certainly stands as coercion even if not at the level contemplated by this section.

Under §5K2.23, Discharged Terms of Imprisonment, Mr. Hall may also be eligible for a sentence that runs consecutively with the time he has already served. Mr. Hall completed a sentence of imprisonment, and subsection (b)(2) of §5G1.3 provides an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Mr. Hall was in a halfway house when his original sentencing date was scheduled, and it was on an agreed upon motion that it was continued to after he was technically no longer considered actively imprisoned. ECF 7 (motion) and ECF 8 (order).

<u>Conduct While on Release, Bond, or Supervision</u>

Since serving his sentence for the previous charge, Mr. Hall remains a model citizen. The Court has seen examples of his exemplary action in the Pre-Sentence Report (ECF 24), Letters from his employers and family Employed, married, paying child support for children from past relationships, caring for his disabled mother, paying taxes, remaining drug and alcohol free, keeping the peace and being of good behavior. He remains in treatment for lingering mental health issues. He never tested positive for any illegal substance while incarcerated and has all clean screens since his release. Transcript pg. 15.

<u>Community ties (§5H1.6)</u>

Much like family ties and responsibilities, community ties are not usually considered relevant, but they may be considered under a variance in lieu of a departure.

### *Early Plea*

Mr. Hall plead guilty at the first available chance. From first being approached by the Government he has cooperated in every way and offered to do more.

### ***A Downward Variance is Appropriate for Mr. Hall***

Based on the above considerations and applying them to Mr. Hall's current situation, a downward variance is appropriate. The Pre-Sentence Report provides a nineteen (19) as the total offense level with a Criminal History Category of III. (EFC No. 24). This recommends an active term of incarceration of thirty-seven (37) to forty-one (41) months.

Mr. Hall voluntarily disclosed the federal offense upon interview. He immediately accepted responsibility for the crime. Due to the impact of the insinuated threats/actual threats by the prison guard, Mr. Hall was coerced or under duress when he began participating in this conspiracy. One sees his efforts to address his financial responsibilities to his children, to rebuild a relationship with them, to help his mother as she declines, to maintain employment and even excel. Therefore, the totality of the circumstances calls for a variance.

### Conclusion

Therefore, Mr. Hall encourages this Court not to sentence him to any period of active incarceration, to accept this motion and to consider the conditions which would allow Mr. Hall to care for his mother, children, and continue to work. Mr. Hall will, of course, provide any additional information or answer any questions the Court may have either prior to or at the sentencing hearing scheduled for October 10, 2024, at 10:00 a.m.

Dated: September 15, 2024

Respectfully submitted,

_____/s/ Charles R. Samuels_____
Charles R. Samuels, VSB # 65899
Charles R. Samuels, Attorney at Law, PLLC
4908 Monument Ave., Ste. 100
Richmond, Virginia 23230
Phone: 804-677-7273
Fax: 804-843-8523
E-mail:crsamuels@gmail.com
*Counsel for Mr. Hall*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Case No.: 3:24CR18
 Judge Robert E. Payne

WILLIAM HALL,
       Defendant.

### Certificate of Service

This is to certify that on Tuesday, September 17, 2024, I sent a copy of this Motion and Sentencing Memorandum via e-mail to Avishek Panth, Esq., at Avishek.Panth@usdoj.gov.

   /s/ Charles R. Samuels
Charles R. Samuels, VSB # 65899
Charles R. Samuels, Attorney at Law, PLLC
4908 Monument Ave., Ste. 100
Richmond, Virginia 23230
Phone: 804-677-7273
Fax: 804-843-8523
E-mail:crsamuels@gmail.com
*Counsel for Mr. Hall*